No. 26-1437

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

CAMERON JOHNSON, ET AL.,

*Plaintiffs-Appellants,*

v.

A. SCOTT FLEMING, in his official capacity as the Director of the
State Council of Higher Education for Virginia, ET AL.,

*Defendants-Appellees.*

On Appeal from the United States District Court
for the Eastern District of Virginia

## OPPOSITION TO INJUNCTION PENDING APPEAL

JAY JONES
  *Attorney General*

GRETCHEN E. NYGAARD
  *Deputy Attorney General*

JACQUELINE C. HEDBLOM
  *Senior Assistant Attorney
  General/Trial Section Chief*

CALVIN C. BROWN
  *Senior Assistant Attorney
  General/Civil Unit Manager*

April 27, 2026

ROBERT S. CLAIBORNE, JR.
CHRISTOPHER P. BERNHARDT
  *Assistant Attorneys General*

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 482-2275 – Telephone
(804) 371-2087 – Facsimile
rclaibornejr@oag.state.va.us
cbernhardt@oag.state.va.us

*Counsel for Appellees*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..................................................................... iii

INTRODUCTION...................................................................................1

BACKGROUND ....................................................................................2

A. Virginia has long prohibited public funding for religious
   vocational training..........................................................................2

B. SCHEV's TAG Program..................................................................5

C. The Virginia National Guard's STAG Program.................................7

D. The challengers are ineligible for public funding of their
   religious vocational training............................................................9

LEGAL STANDARD ...........................................................................12

ARGUMENT .......................................................................................12

I.  The challengers are unlikely to succeed on the merits.....................13

   A. *Davey* is controlling Supreme Court precedent.............................13

   B. *Davey* applies here. .................................................................17

      1.  Religious vocational training is ineligible.................................17
      2.  The source of the classification standard is inapposite. ...........20
      3.  Open-mindedness in career paths does not distinguish the
          challengers from Davey. .......................................................22
      4.  The challengers' "different arguments" do not distinguish them
          from Davey...........................................................................23

II. Denying the requested injunction will not irreparably harm the
    challengers. ..................................................................................26

III. The requested injunction would substantially injure other interested
     parties. .......................................................................................27

IV. The requested injunction is not in the public interest. ....................28

CONCLUSION ...................................................................... 28

CERTIFICATE OF COMPLIANCE ...................................... 30

CERTIFICATE OF SERVICE ............................................ 31

# TABLE OF AUTHORITIES

**Cases**          **Page(s)**

*Carson v. Fulton v. City of Philadelphia,*
  593 U.S. 522 (2021) .................................................................25

*Carson v. Makin,*
  596 U.S. 767 (2022) .................................................................24

*City of Martinsville v. Express Scripts, Inc.,*
  128 F.4th 265 (4th Cir. 2025) ........................................ 16, 20

*City Church of Lukumi Babalu Aye v. City of Hialeah,*
  508 U.S. 520 (1993) .................................................................24

*Colo. Christian Univ. v. Weaver,*
  534 F.3d 1245 (10th Cir. 2008) ...........................................26

*Espinoza v. Mont. Dep't of Revenue,*
  591 U.S. 464 (2020) .................................................................24

*Hart v. Massanari,*
  266 F.3d 1155 (9th Cir. 2001) ...............................................23

*Hilton v. Braunskill,*
  481 U.S. 770 (1987) .......................................................... *passim*

Order Denying Mot. for Prelim. Inj. (Mar. 17, 2000),
  *in Davey v. Locke*, No. C00-61R (W.D. Wash.) ..................27

*Jones v. Commonwealth,*
  185 Va. 335 (1946) .................................................................... 1

*Locke v. Davey,*
  540 U.S. 712 (2004) .......................................................... *passim*

*Mallory v. Norfolk S. Ry.,*
  600 U.S. 122 (2023) ........................................................ 16, 23

*Maryland v. King,*
   567 U.S. 1301 (2012) ................................................................. 26

*New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.,*
   434 U.S. 1345 (1977) ................................................................. 26

*Nken v. Holder,*
   556 U.S. 418 (2009) ................................................................. 12

*Pavek v. Simon,*
   967 F.3d 905 (8th Cir. 2020) ................................................... 28

*Payne v. Taslimi,*
   998 F.3d 648 (4th Cir. 2021) ................................................... 16

*Reid v. Gholson,*
   229 Va. 179 (1985) ............................................................. 1, 28

*Rodriguez de Quijas v. Shearson/Am. Express, Inc.,*
   490 U.S. 477 (1989) ........................................................ 16, 23

*Sch. Dist. of Abington Twp. v. Schempp,*
   374 U.S. 203 (1963) ................................................................. 25

*SSA v. Am. Fed'n of State, Cnty. & Mun. Emps.,*
   145 S. Ct. 1626 (2025) ............................................................. 12

*State Oil Co. v. Khan,*
   522 U.S. 3 (1997) ..................................................................... 16

*Trinity Lutheran Church of Columbia, Inc. v. Comer,*
   582 U.S. 449 (2017) ................................................................. 24

*Va. Coll. Bldg. Auth. v. Lynn,*
   260 Va. 608 (2000) ................................... 4, 17, 19, 22, 23

*Vlaming v. W. Point Sch. Bd.,*
   302 Va. 504 (2023) ............................................................. 1, 28

**Constitutional Provisions**           **Page(s)**

U.S. Const. amend. I ................................................... *passim*

U.S. Const. amend. XIV, § 1 ................................................ *passim*

Va. Const. art. I, § 16 ............................................................3

Va. Const. art. VIII, § 11 ............................................... *passim*

Va. Const. art. III, § 11 (1830) ...........................................3

Wash. Const. art. I, § 11 .......................................... 13, 17, 20

**Statutes** **Page(s)**

An Act for Establishing Religious Freedom, ch. 34 (Oct. 17, 1785), *reprinted in* 12 William Waller Hening, STATUTES AT LARGE 84, 86 (1823) ...........................................3

Va. Code § 23.1-610 ...........................................................8

Va. Code § 23.1-610(A) ..................................... 4, 8, 17, 19, 22

Va. Code § 23.1-610(B) ........................................................8

Va. Code § 23.1-628(A) ......................................... 5, 17, 18, 21

Va. Code § 23.1-629 .............................................................5

Va. Code § 23.1-631(A) ........................................................5

Va. Code § 23.1-631(C) ......................................... 4, 17, 18, 21

Va. Code § 57-1 ...................................................................3

Wash. Rev. Code § 28B.10.814 (1997) ...................... 13, 17, 20

**Regulations** **Page(s)**

8 Va. Admin. Code § 40-71-10, et seq. ................................5

8 Va. Admin. Code § 40-71-10 ............................. 6, 7, 18, 21

8 Va. Admin. Code § 40-71-20 ............................................5

8 Va. Admin. Code § 40-71-20(3)(a) ...................................5

8 Va. Admin. Code § 40-71-20(3)(b) .......................................................5

8 Va. Admin. Code § 40-71-30(A) .....................................................5, 6, 7

8 Va. Admin. Code § 40-71-30(C) .........................................................5

8 Va. Admin. Code § 40-71-40 .............................................................5

8 Va. Admin. Code § 40-71-60(B)(1) .....................................................6, 7

8 Va. Admin. Code § 40-71-60(B)(2) .....................................................6, 7

**Rules**                                                           **Page(s)**

Fed. R. App. P. 8(a)(1)(C) .................................................................12

Fed. R. App. P. 8(a)(2) .......................................................................12

**Other Sources**                                                   **Page(s)**

*CIP: The Classification of Instructional Programs*,
    NCES.ED.GOV (last accessed April 27, 2026), *available at*
    https://tinyurl.com/bddmfyez.................................................................5

COMMAND POLICY 22-023 VIRGINIA NATIONAL GUARD STATE
    TUITION ASSISTANCE PROGRAM (Sept. 15, 2022), *available
    at* https://tinyurl.com/mu4chyyu .................................................8, 18

1 A.E. Dick Howard, COMMENTARIES ON THE CONSTITUTION
    OF VIRGINIA (1974) ...........................................................................2

2 A.E. Dick Howard, COMMENTARIES ON THE CONSTITUTION
    OF VIRGINIA (1974) ...........................................................................3

Davey's Br., *in Locke v. Davey*, No. 20-1315 (U.S.), *available
    at* 2003 U.S. S. Ct. Briefs LEXIS 757..........................................15, 18

*Detail for CIP Code 38*, NCES.ED.GOV (last accessed April 27,
    2026), *available at* https://tinyurl.com/shhp8scm.............................6

*Detail for CIP Code 39*, NCES.ED.GOV (last accessed April 27,
    2026), *available at* https://tinyurl.com/bde7fkx7 ..........................6, 18

Nat'l Ctr. for Educ. Stats., FREQUENTLY ASKED QUESTIONS FOR CIP WEBSITE & CIP WIZARD (Aug. 2020), *available at* https://tinyurl.com/bde676s9 ....................................................... 7, 18

Hon. Stephen R. McCullough, VIRGINIA CONSTITUTIONAL LAW (LexisNexis 2025)........................................................................ 2

LIBERTY UNIVERSITY ACADEMIC PROGRAMS (last updated June 18, 2025), *available at* https://tinyurl.com/v8tb7bxa ................. 7, 9, 10

*Master of Divinity (M.Div.)*, CATALOG.LIBERTY.EDU (last accessed Apr. 27, 2026), *available at* https://tinyurl.com/369hbaea..................................................... 19, 21

*Music & Worship (B.S.) – Resident*, CATALOG.LIBERTY.EDU (last accessed Apr. 27, 2026), *available at* https://tinyurl.com/5a6ku7t9.............................................................9

*Pastoral Leadership Major (B.S.)*, CATALOG.LIBERTY.EDU (last accessed Apr. 27, 2026), *available at* https://tinyurl.com/5ahu56cf .............................................................9

*Religion Major (B.S.)*, CATALOG.LIBERTY.EDU (last accessed Apr. 27, 2026), *available at* https://tinyurl.com/369hbaea .... 10, 19, 21

REPORT OF THE COMM'N ON CONSTITUTIONAL REVISION (1969) ................. 3

*State Tuition Assistance Program*, VA. NAT'L GUARD (last accessed Apr. 27, 2026), *available at* https://tinyurl.com/4n2jh833 .............................................................8

Wash.'s Br., *in Locke v. Davey*, No. 20-1315 (U.S.), *available at* 2003 U.S. S. Ct. Briefs LEXIS 613................................................23

**INTRODUCTION**

Virginia has a "historic role in the protection of religious liberties." *Vlaming v. W. Point Sch. Bd.*, 302 Va. 504, 528 (2023). Indeed, "the 'constitutional guarantees of religious freedom have no deeper roots than in Virginia, where they originated, and nowhere have they been more scrupulously observed.'" *Id.* (quoting *Reid v. Gholson*, 229 Va. 179, 187 (1985)). "No State has more jealously guarded and preserved the questions of religious belief and religious worship as questions between each individual man and his Maker than Virginia." *Id.* (quoting *Jones v. Commonwealth*, 185 Va. 335, 343 (1946)).

Plaintiffs-Appellants Cameron Johnson, Luke Thomas, and Trace Stevens (together, "challengers") filed this lawsuit to compel Virginia's citizens to provide taxpayer support for their religious vocational training. The challengers seek such support without regard for their fellow citizens' own freedoms of conscience or differing religious dictates. They say that this is required under the Free Exercise and Establishment Clauses of the U.S. Constitution's First Amendment and the Equal Protection Clause of its Fourteenth Amendment. But the challengers' arguments are foreclosed by the Supreme Court's binding precedent in

*Locke v. Davey*, 540 U.S. 712 (2004). The challengers are wrong in asserting that Virginia denies them scholarship funding "simply because they chose the 'wrong' religious degrees." Mot. 1. They are wrong in characterizing the district court as having "blessed . . . discrimination." *Id.* They are wrong in asserting that Virginia is "inflicting . . . irreparable harm on [them] while this appeal proceeds." *Id.* And, ultimately, they do not "need" the "immediate relief" that they seek from this Court. *Id.*

This Court should deny the challengers' motion, which is not well-founded.

## BACKGROUND

### A. Virginia has long prohibited public funding for religious vocational training.

A fundamental principle of religious liberty in Virginia is that no one should be compelled to fund another's religious vocational training.

This prohibition was informed by Virginia's colonial experience with the established Church of England and compelled taxpayer support for ministers' salaries, Hon. Stephen R. McCullough, VIRGINIA CONSTITUTIONAL LAW § 6.04 (LexisNexis 2025), as well as a 1784 attempt "to levy a general assessment for the support of teachers of religion," 1 A.E. Dick Howard, COMMENTARIES ON THE CONSTITUTION OF VIRGINIA

291–92 (1974); *Davey*, 540 U.S. at 722 n.6. Since the enactment of the Statute for Religious Freedom in 1786, Virginia law has provided that "no man shall be compelled to . . . support any religious worship, place or ministry whatsoever." Va. Code § 57-1; An Act for Establishing Religious Freedom, ch. 34 (Oct. 17, 1785), *reprinted in* 12 William Waller Hening, STATUTES AT LARGE 84, 86 (1823). And this prohibition has been in the Virginia Constitution since 1830. Va. Const. art. I, § 16; Va. Const. art. III, § 11 (1830).

That principle has carried forward as Virginia began providing grants to students attending nonprofit collegiate or graduate programs in the twentieth century. Article VIII, § 11 was added to the Virginia Constitution in 1971 and includes a condition that such grants are "not to provide religious training or theological education." Va. Const. art. VIII, § 11; 2 Howard, *supra*, at 957–58; REPORT OF THE COMM'N ON CONSTITUTIONAL REVISION 273 (1969). That constitutional condition is also incorporated in the statutory eligibility criteria for the grant programs at issue in this case—the State Council of Higher Education in Virginia's ("SCHEV") Tuition Assistance Grant ("TAG") Program, Va.

Code § 23.1-631(C), and the Virginia National Guard's State Tuition Assistance Grant ("STAG") Program, *id.* § 23.1-610(A).

The Supreme Court of Virginia interpreted and applied the Article VIII, § 11 condition in *Virginia College Building Authority v. Lynn*, 260 Va. 608 (2000). It interpreted the respective prohibitions on funding for:

- "'theological education'" as "applicable to a seminary or other institution whose purpose is to prepare students for vocations associated with ordination, such as rabbi, minister or priest;" and

- "'religious training'" as "applicable to institutions or departments within institutions whose purpose is preparation of students for religious vocations other than those associated with ordination," such as "missionary or director of religious education."

*Id.* at 624. The Court held that programs within Regent University's School of Divinity—"which ha[d] a specific purpose of theological education"—were ineligible for state funding. *Id.* at 617, 640. And it rejected the view, *id.* at 640, that "the focus of [the] inquiry should" have been on the "institution as a whole" rather than "a dissection . . . into its constituent schools and their departments and programs," *id.* at 651 (Koontz, J., concurring in pt. & dissenting in pt.).

4

**B.     SCHEV's TAG Program.**

The TAG Program provides grants to "Virginia students who are obligated to pay tuition as full-time undergraduate, graduate, or professional students at an" eligible "nonprofit private institution of higher education." Va. Code §§ 23.1-628(A), -631(A). SCHEV administers the program, *id.* § 23.1-629, and has adopted regulations for that purpose, 8 Va. Admin. Code § 40-71-10, et seq.

Institutions apply to SCHEV to qualify, 8 Va. Admin. Code § 40-71-20, and their applications must include lists of their eligible programs along with their respective Classification of Instructional Program ("CIP") Codes,[1] *id.* § 40-71-20(3)(a), (b). Qualifying institutions hold the funds in trust, *id.* § 40-71-30(A), (C), the students apply to their institutions for grant awards, *id.* § 40-71-40, and the institutions make eligibility and award determinations, 8 Va. Admin. Code § 40-71-60(B)(1), (2), disburse grants to students' accounts, *id.* § 40-71-30(C), and

---

[1] CIP Codes were developed by the U.S. Department of Education's National Center for Education Statistics and provide "a taxonomic scheme that supports the accurate tracking and reporting of fields of study and program completions activity." *CIP: The Classification of Instructional Programs*, NCES.ED.GOV (last accessed April 27, 2026), *available at* https://tinyurl.com/bddmfyez.

certify to SCHEV that the recipients are eligible, *id.* § 40-71-30(A), 40-71-60(B)(1), (2).

For purposes of implementing the applicable constitutional and statutory restrictions against grants for religious training or theological education, SCHEV considers programs "classified [in the] CIP Code 39-series" to be "not eligible." *Id.* § 40-71-10. CIP Code 39 is titled, "Theology and Religious Vocations." *Detail for CIP Code 39*, NCES.ED.GOV (last accessed April 27, 2026), *available at* https://tinyurl.com/bde7fkx7. Within the classification system, CIP Code 39-series programs are understood as those that "prepare individuals for the professional practice of religious vocations." *Id.*

These are, notably, different from CIP Code 38-series programs. Appearing under the title, "Philosophy and Religious Studies," CIP Code 38-series programs "focus on logical inquiry, philosophical analysis, and the academic study of organized systems of belief and religious practices." *Detail for CIP Code 38*, NCES.ED.GOV (last accessed April 27, 2026), *available at* https://tinyurl.com/shhp8scm. While the CIP Code 38-series programs "focus on the study of religion," the CIP Code 39-series programs differ in that they "are intended for individuals that are

preparing for religious vocations." Nat'l Ctr. for Educ. Stats., FREQUENTLY ASKED QUESTIONS FOR CIP WEBSITE & CIP WIZARD 6 (Aug. 2020), *available at* https://tinyurl.com/bde676s9.

The applicant institution assigns the CIP Codes to its programs, *see, e.g.*, LIBERTY UNIVERSITY ACADEMIC PROGRAMS 9 (last updated June 18, 2025), *available at* https://tinyurl.com/v8tb7bxa, and certifies to SCHEV that grant recipients are in eligible programs, 8 Va. Admin. Code §§ 40-71-30(A), 40-71-60(B)(1), (2).

SCHEV regulations also address the circumstances of a student doubling in an eligible major alongside an ineligible one. The student may still receive the grant if his classes in the ineligible major do not exceed those in the eligible major for the semester. 8 Va. Admin. Code § 40-71-10. SCHEV may also make exceptions "based on circumstances beyond the control of the student," *id.*, such as limitations on course offerings in the given semester.

## C.     The Virginia National Guard's STAG Program.

The STAG Program allows grants to members of the Virginia National Guard who are "enrolled in any course or program at any public institution of higher education or accredited nonprofit private institution

of higher education whose primary purpose is to provide collegiate or graduate education" and satisfy other eligibility criteria. Va. Code § 23.1-610(A). Virginia's Department of Military Affairs administers the program, *id.* § 23.1-610, and the Adjutant General has issued a command policy to "implement[]" it and provide "procedural guidance," COMMAND POLICY 22-023 VIRGINIA NATIONAL GUARD STATE TUITION ASSISTANCE PROGRAM ¶ 2 (Sept. 15, 2022) [hereafter COMMAND POLICY], *available at* https://tinyurl.com/mu4chyyu.

Servicemembers submit their applications to the Department, which makes eligibility and award determinations. Va. Code § 23.1-610(B); COMMAND POLICY, *supra*, ¶ 9(a)(1), (c); *State Tuition Assistance Program*, VA. NAT'L GUARD (last accessed Apr. 27, 2026), *available at* https://tinyurl.com/4n2jh833. As part of this application process, the servicemember must sign a promissory note stating that he "understand[s] and agree[s] to" terms including that grant awards "cannot be used to fund degrees in religious training or theological education." A098. The command policy references "seminary school" as an example of an ineligible "theological degree[]." COMMAND POLICY, *supra*, ¶ 7(a)(6)(c).

**D. The challengers' programs in religious vocational training are ineligible for grant funding.**

The three challengers' desired programs in religious training or theological education are ineligible for grants through the TAG and STAG Programs, respectively.

Johnson is majoring in Pastoral Leadership. A188. Liberty offers this program through its school of divinity, *Pastoral Leadership Major (B.S.)*, CATALOG.LIBERTY.EDU (last accessed Apr. 27, 2026), *available at* https://tinyurl.com/5ahu56cf, and classifies it in the CIP Code 39-series, LIBERTY UNIVERSITY ACADEMIC PROGRAMS, *supra*, at 11. It is ineligible for a grant through SCHEV's TAG Program. A188.

Thomas wants to major in Music and Worship, A311–312, which Liberty classifies as a CIP Code 39-series program, LIBERTY UNIVERSITY ACADEMIC PROGRAMS, *supra*, at 10; *see also Music & Worship (B.S.) – Resident*, CATALOG.LIBERTY.EDU (last accessed Apr. 27, 2026), *available at* https://tinyurl.com/5a6ku7t9. It is ineligible for a TAG Program grant. A312.

Stevens is a member of the Virginia Army National Guard and wishes to pursue a Master of Divinity degree at Liberty. A309. Liberty offers this program through its school of divinity, *Master of Divinity*

*(M.Div.)*, CATALOG.LIBERTY.EDU (last accessed Apr. 27, 2026), *available at* https://tinyurl.com/369hbaea, and it is an ineligible program in religious training or theological education under the Department's STAG Program, A309. While the Department's decisions do not depend on CIP Code classifications, Liberty classifies the Master of Divinity in the CIP Code-39 series. LIBERTY UNIVERSITY ACADEMIC PROGRAMS, *supra*, at 11.

Stevens earlier obtained a Bachelor of Science in Religion, A308, which is also offered through Liberty's school of divinity, *Religion Major (B.S.)*, CATALOG.LIBERTY.EDU (last accessed Apr. 27, 2026), *available at* https://tinyurl.com/369hbaea. Although Liberty classifies this major as a CIP Code-38 series program, LIBERTY UNIVERSITY ACADEMIC PROGRAMS, *supra*, at 9, the Department found it to be ineligible based on publicly-available information from Liberty's website (including that it is offered through Liberty's school of divinity) and Stevens's decision to strike through the "religious training or theological education" condition in his promissory note, A125–127, A131.

The three challengers are interested in using their religious training or theological education for religious vocations, but they also say that they are open to secular career options. A022–023, A025, A031.

The challengers filed this litigation, contending that their programs' ineligibility violates:

- the Free Exercise Clause (Count I);

- the Free Exercise and Establishment Clauses in combination (Count II); and

- the Equal Protection Clause (Count III).

A040–046. They moved for a preliminary injunction, which the district court denied. A332–334. The district court also dismissed Johnson's and Thomas's claims against the SCHEV defendants, as foreclosed by *Davey*. A322–329. While the district court found Stevens's claims against the Department defendants "unlikely to succeed" under the preliminary injunction standard, A333, and "suspect[ed] that" *Davey* "dooms" them, A322, it let them to go forward, A330–331. The district court wanted to rule with the benefit of "additional information" on the Department's implementation of the STAG Program. A330–331.

The challengers noticed their appeal and moved the district court for an injunction pending appeal.[2] A336–343. The district court denied the injunction. Dkt. No. 16.

---

[2] This Court heard oral argument on December 10, 2025, in *Hall v. Fleming*, No. 25-1574 (4th Cir.), another dismissed Free Exercise

## LEGAL STANDARD

Under a four-factor analysis, this Court may enter "an order . . . granting an injunction while an appeal is pending." Fed. R. App. P. 8(a)(1)(C), *referenced by* Fed. R. App. P. 8(a)(2). The Court considers (1) whether the movant "has made a strong showing that he is likely to succeed on the merits;" (2) whether the movant "will be irreparably injured absent" the injunction; (3) "whether issuance of the [injunction] will substantially injure the other parties interested in the proceeding;" and (4) "where the public interest lies." *Hilton v. Braunskill*, 481 U.S. 770, 776 (1987); *SSA v. Am. Fed'n of State, Cnty. & Mun. Emps.*, 145 S. Ct. 1626, 1627 (2025). The movant bears the burden of showing that each factor supports the injunction. *Nken v. Holder*, 556 U.S. 418, 433 (2009).

## ARGUMENT

This Court should deny the challengers' motion, which fails on all four factors.

---

challenge to SCHEV's denial of a grant for a major in religious vocational training.

**I.    The challengers are unlikely to succeed on the merits.**

Under the first factor, the challengers fail to make a "strong showing that [they are] likely to succeed on the merits." *Hilton*, 481 U.S. at 776. There is nothing strong about their attempts to argue their way around the binding Supreme Court precedent of *Davey*.

**A.    *Davey* is controlling Supreme Court precedent.**

Each of the challengers' three counts fails under *Davey*, where the Supreme Court held that Washington State did not violate the Free Exercise, Establishment, or Equal Protection Clauses in declining to provide scholarship funding for a student's religious vocational training.

Washington's Constitution prohibited the use of "public money" for "religious . . . instruction," Wash. Const. art. I, § 11, and the scholarship program's statute incorporated this "prohibition on providing funds to students to pursue degrees that are 'devotional in nature or designed to induce religious faith,'" *Davey*, 540 U.S. at 716 (citation omitted); Wash. Rev. Code § 28B.10.814 (1997) ("No aid shall be awarded to any student who is pursuing a degree in theology."). Davey's "devotional theology degree" made him ineligible. *Davey*, 540 U.S. at 717. He was pursuing a double major in pastoral ministries and business management and

13

administration, hoping to receive "college training for a lifetime of ministry, specifically as a church pastor." *Id.* (citation omitted). He sued State officials, contending that his ineligibility violated the Free Exercise, Establishment, and Equal Protection Clauses. *Id.* at 718.

The Supreme Court rejected each of Davey's challenges.

Rejecting the Free Exercise challenge, the Court observed that "[t]he State's interest in not funding the pursuit of devotional degrees is substantial and the exclusion of such funding places a relatively minor burden" on scholarship applicants. *Id.* at 725. States have "historic and substantial" "antiestablishment interests" against funding "training for religious professions," which is "not fungible" with "training for secular professions." *Id.* at 721–22, 725. The Court specifically referenced Virginia's experience in the 1780s, which led to its prohibition against compulsory support for ministries. *Id.* at 722 n.6. In "merely cho[osing] not to fund a distinct category of instruction," Washington "d[id] not require students to choose between their religious beliefs and receiving a government benefit." *Id.* at 720–21. Scholarships could still be used at "pervasively religious schools," and students awarded scholarships could still "take devotional theology courses" outside of the major. *Id.* at 724–

25. The State's differential treatment of "religious education for the ministry" and "education for other callings" was "not evidence of hostility toward religion." *Id.* at 721.

For overlapping reasons, the Court rejected Davey's Establishment Clause arguments. *Id.* at 725 n.10. Davey argued that Washington violated the Establishment Clause by "discriminat[ing]" against "religious instruction" and "entangl[ing]" itself in religious matters. Davey's Br. *72–75, *in Locke v. Davey*, No. 20-1315 (U.S.), *available at* 2003 U.S. S. Ct. Briefs LEXIS 757. Simply put, "the State ha[d] not impermissibly done so." *Davey*, 540 U.S. at 725 n.10. There was no discrimination or entanglement in the differential treatment of religious vocational training relative to secular vocational training, those being nonfungible for purposes of constitutional comparison. *Id.* at 721.

And for overlapping reasons, the Court rejected the Equal Protection argument. *Id.* at 720 n.3. The Court "appl[ied] rational-basis scrutiny" and held that Washington's "program passes such review" consistent with the foregoing analysis. *Id.*

*Davey* is the authoritative precedent upholding a State's right to deny state-funded scholarships for collegiate and graduate students'

religious vocational training. The challengers can point to no precedent of the Supreme Court or of this Court where any such scholarship program was held to be in violation of the Free Exercise, Establishment, or Equal Protection Clauses. *Davey* "has direct application in [this] case," "directly controls," and "should [be] follow[ed]." *Mallory v. Norfolk S. Ry.*, 600 U.S. 122, 136 (2023) (quoting *Rodriguez de Quijas v. Shearson/Am. Express, Inc.*, 490 U.S. 477, 484 (1989)). "[I]t remains the Supreme Court's 'prerogative alone to overrule one of its precedents.'" *Payne v. Taslimi*, 998 F.3d 648, 654 (4th Cir. 2021) (quoting *State Oil Co. v. Khan*, 522 U.S. 3, 20 (1997)). And *Davey*'s "rationale binds [a lower court] even if some immaterial facts differ." *City of Martinsville v. Express Scripts, Inc.*, 128 F.4th 265, 271 (4th Cir. 2025).

The challengers' request to overrule *Davey*, Mot. 19, cannot be granted in this Court, *Payne*, 998 F.3d at 654, and their attempts to effectively accomplish the same through argument, Mot. 16–19, similarly fail to make a "strong showing" of their "likely" success on the merits, *Hilton*, 481 U.S. at 776.

**B.** *Davey* **applies here.**

The challengers present four arguments for distinguishing *Davey*, Mot. 16–19, but they are not well-founded and should not persuade this Court to depart from *Davey*.

**1.  Religious vocational training is ineligible.**

"Virginia's programs" do not "operate differently in significant ways" from the Washington program upheld in *Davey*. Mot. 16–17.

Davey's pastoral ministries major made him ineligible for Washington's scholarship under that State's constitutional and statutory restrictions against the funding of religious vocational training, *Davey*, 540 U.S. at 716; Wash. Const. art. I, § 11; Wash. Rev. Code § 28B.10.814 (1997), just as the challengers' Pastoral Leadership, Music and Worship, Religion (offered through the school of divinity), and Master of Divinity programs are ineligible under Virginia's similar constitutional and statutory restrictions, Va. Const. art. VIII, § 11; Va. Code §§ 23.1-610(A), -628(A), -631(C). Virginia does not simply "pick[] and choose[]." Mot. 16. There are governing constitutional and statutory provisions, Va. Const. art. VIII, § 11; Va. Code §§ 23.1-610(A), -628(A), -631(C), as well as Supreme Court of Virginia precedent, *Lynn*, 260 Va. 608, and regulations

17

and a command policy, 8 Va. Admin. Code § 40-71-10; COMMAND POLICY, *supra*, ¶ 7(a)(6)(c), that guide eligibility determinations.

SCHEV is not simply "pick[ing] and choos[ing]" in allowing scholarships for CIP Code 38-series majors but not CIP Code 39-series majors. Mot. 16. Pursuant to constitutional and statutory limitations, Va. Const. art. VIII, § 11; Va. Code §§ 23.1-628(A), -631(C), it is denying scholarships for programs that "prepare individuals for the professional practice of religious vocations," *Detail for CIP Code 39*, NCES.ED.GOV, *supra*; Nat'l Ctr. for Educ. Stats., FREQUENTLY ASKED QUESTIONS FOR CIP WEBSITE & CIP WIZARD, *supra*, at 6. And the Supreme Court expressly upheld distinctions between scholarship-ineligible "training for religious professions" and scholarship-eligible "training for secular professions," *Davey*, 540 U.S. at 721–22, 725, after Davey argued that Washington impermissibly distinguished between scholarship-ineligible "degree[s] in religion or theology . . . taught from a perspective that is 'devotional in nature or designed to induce religious faith'" and scholarship-eligible degrees in religion or theology "taught from a 'secular' point of view," Davey's Br. *17–18, *35, *75–76, *supra*. It is entirely consistent with

*Davey* to deny scholarship funding for CIP Code 39-series programs in religious vocational training.

The Department is not just "pick[ing] and choos[ing]," either. Mot. 16. And nothing supports the challengers' assertion that the STAG Program "excludes *all* religious majors" or "*excludes* religious degrees completely,"[3] Mot. 17, with the Department "exercis[ing] unfettered discretion in determining which majors are" ineligible, Mot. 9. The Department applies Virginia's constitutional and statutory restrictions on the funding of "religious training or theological education." Va. Const. art. VIII, § 11; Va. Code § 23.1-610(A). And as to Stevens, here it did so in view of the student's failure to agree that the funding would not be for that purpose and in view of how the institution structures the program. A125–127, A131; *Master of Divinity (M.Div.)*, CATALOG.LIBERTY.EDU, *supra*; *Religion Major (B.S.)*, CATALOG.LIBERTY.EDU, *supra*; *Lynn*, 260 Va. at 617, 640 (holding that programs within a school of divinity were ineligible for state funding under Va. Const. art. VIII, § 11).

---

[3] This is a notable departure from the challengers' narrower—but still wrong—argument, to the district court, that STAG Program grants are not available for majors that are "too religious" or not "secular[] enough." A222.

None of this materially distinguishes *Davey* or amounts to a constitutional violation.

### 2. The source of the classification standard is inapposite.

The challengers make multiple inaccurate assertions in attempting to distinguish Washington's scholarship program as having left classification of ineligible degrees "to each 'institution' using its own standards." Mot. 17 (quoting *Davey*, 540 U.S. at 717).

First, the Supreme Court only mentioned this matter in stating the background facts. *Davey*, 540 U.S. at 717. Nothing in the opinion suggested that it was dispositive of the program's constitutionality. *Express Scripts*, 128 F.4th at 271.

Second, the institution's determination of an ineligible religious vocational degree was not under "its own standards." Mot. 17. Rather, the standards of the Washington Constitution and statute limited eligibility. *Davey*, 540 U.S. at 716; Wash. Const. art. I, § 11; Wash. Rev. Code § 28B.10.814 (1997).

Third, the Washington program's arrangement for institutional determinations does not suggest any unconstitutionality in Virginia's TAG or STAG Programs.

Under the TAG Program, the institution makes the eligibility determination under governing constitutional, statutory, and regulatory provisions. Va. Const. art. VIII, § 11; Va. Code §§ 23.1-628(A), -631(C); 8 Va. Admin. Code § 40-71-10. This is essentially the same institutional role that existed in *Davey*, and the challengers are wrong in saying that it is "a far cry from" it. Mot. 17. Moreover, their characterization of the TAG Program as "impos[ing] government-religiosity standards on private institutions," Mot. 17, ignores *Davey*'s recognition of "the historic and substantial" State "antiestablishment interests" against compulsory taxpayer support for religious vocational training, 540 U.S. at 722, 725.

The challengers are also incorrect in saying that STAG Program eligibility depends on "religiosity determinations" made solely by the Department "itself with no standards or guidelines." Mot. 17. In addition to how the institution structures its programs, *e.g.*, *Master of Divinity (M.Div.)*, CATALOG.LIBERTY.EDU, *supra*; *Religion Major (B.S.)*, CATALOG.LIBERTY.EDU, *supra*, the student's agreement that the scholarship cannot "fund degrees in religious training or theological education," A098, A125–127, A131, informs the Department's eligibility determination under the standards of Virginia constitutional and

21

statutory law, Va. Const. art. VIII, § 11; Va. Code § 23.1-610(A); *Lynn*, 260 Va. at 617, 624, 640. And there is nothing in any of that to distinguish the program from *Davey*'s clear recognition that States may constitutionally deny taxpayer funding for religious vocational training.

The challengers, again, are wrong about *Davey* and wrong about Virginia law.

### 3. Open-mindedness in career paths does not distinguish the challengers from Davey.

The challengers' programs in religious vocational training are not constitutionally entitled to State scholarship funding simply because they say that they are "undecided about [a] career path," are "keeping [their] options open," "remain[] interested in" secular careers, "may pursue" secular careers, or intend to work in "a military scenario." Mot. 18.

The Supreme Court upheld Washington's "prohibit[ion on] even indirectly funding religious instruction that will prepare students for the ministry," regardless of the student's intended or eventual use of that instruction. *Davey*, 540 U.S. at 719. Washington "place[d] no . . . condition on the recipient['s]" "'plans to become a minister" but "restrict[ed] only the type of instruction that the state financial aid

programs will underwrite." Wash.'s Br. *41 n.7, *in Davey*, No. 02-1315, *available at* 2003 U.S. S. Ct. Briefs LEXIS 613. The "student's motivation in seeking religious instruction" did not "play any part in applicability of" Washington's prohibition. *Id.* at *58. Similarly, here, Virginia's prohibitions are focused on the natural object of a degree in "theological education" or "religious training"—to "prepare students for vocations associated with ordination" or "for religious vocations other than those associated with ordination." *Lynn*, 260 Va. at 624.

The challengers' equivocations over their career plans do nothing to distinguish Virginia's "denial of funding for" their "vocational religious instruction," which is supported by a "historic and substantial state interest" regardless of the student's claimed intent. *Davey*, 540 U.S. at 725.

### 4. The challengers' "different arguments" do not distinguish them from Davey.

The challengers' "focus on different arguments" does not mean that *Davey* "doesn't control." Mot. 18. They do not, by their choice of argument, get to subject Virginia to a Constitution of their own choosing.

*Davey* "has direct application" and "directly controls" here. *Mallory*, 600 U.S. at 136 (quoting *Rodriguez de Quijas*, 490 U.S. at 484); *Hart v.*

*Massanari*, 266 F.3d 1155, 1171 (9th Cir. 2001) ("A decision of the Supreme Court will control that corner of the law unless and until the Supreme Court itself overrules or modifies it.").

- The challengers contend that a State may not deny scholarship funding for religious vocational training under the Free Exercise, Establishment, and Equal Protection Clauses. A040–A046.

- In *Davey*, the Supreme Court held that a State may deny scholarship funding for religious vocational training consistent with those same Clauses. 540 U.S. at 718–24, 720 n.3, 725 n.10.

- Thus, under *Davey*, Virginia may, likewise, deny scholarship funding for the challengers' religious vocational training consistent with those Clauses.

The challengers do not get to pick and choose which precedents apply. And their other cited precedents do not displace *Davey*'s clear application here. *E.g.*, *Carson v. Makin*, 596 U.S. 767, 788–89 (2022) (distinguishing its holding, as to tuition assistance for public or private secondary schools, from *Davey*); *Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464, 479–80 (2020) (same); *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 464–65 (2017) (distinguishing its holding, as to funding for nonprofits' playground surfaces, from *Davey*); *Davey*, 540 U.S. at 720 (distinguishing *City Church of Lukumi Babalu Aye v. City*

*of Hialeah*, 508 U.S. 520 (1993), where the city violated the Free Exercise Clause in criminalizing ritualistic animal sacrifices conducted according to the Santeria religion).

The challengers are not supported by their arguments outside of *Davey*'s branch of jurisprudence. Mot. 19–24. Differential treatment of religious vocational training relative to secular vocational training, Mot. 19–20, 21–22, 23–24—again—is constitutional, *Davey*, 540 U.S. at 721. The Constitution's treatment of chaplains, Mot. 20, is inapposite and based on a different history and interest from that concerning a State's decision not to fund religious vocational training, *Sch. Dist. of Abington Twp. v. Schempp*, 374 U.S. 203, 297–98 (1963). Neither the TAG Program nor the STAG Program has anything like the offending exceptions in *Carson v. Fulton v. City of Philadelphia*, 593 U.S. 522, 537 (2021), Mot. 20–21, where the government could, for any reason that it chose, waive a requirement that agencies provide services to prospective foster parents regardless of their sexual orientation, 593 U.S. at 534–38. The TAG and STAG Programs' limitations are, simply, on funding degrees in religious vocational training as was upheld in *Davey*, 540 U.S. 712, and do not involve an overly "intrusive" inquiry into whether an institution is

"pervasively secular"—as informed by the religious affiliations, beliefs, practices, activities, and funding of the school, its leadership, its faculty, and its students—as Colorado's was in *Colorado Christian University v. Weaver*, 534 F.3d 1245, 1250–51, 1256 (10th Cir. 2008), Mot. 22–23. And the Programs' restrictions are supported by a "historic and substantial state interest," *Davey*, 540 U.S. at 725, and not subject to strict scrutiny, Mot. 23–24.

The challengers are unlikely to succeed on the merits.

## II. Denying the requested injunction will not irreparably harm the challengers.

The challengers fail to carry their burden under the second factor. They will not "be irreparably injured absent" the injunction, *Hilton*, 481 U.S. at 776, but Virginia would be.

"Any time a State is enjoined by a court from effectuating statutes enacted by representatives of its people"—or constitutional provisions ratified by the people themselves—"it suffers a form of irreparable injury." *Maryland v. King*, 567 U.S. 1301, 1303 (2012) (Roberts, C.J., in chambers) (quoting *New Motor Vehicle Bd. of Cal. v. Orrin W. Fox Co.*, 434 U.S. 1345, 1351 (1977) (Rehnquist, J., in chambers)). In addition, if ultimately prevailing on the merits, SCHEV and the Department would

foreseeably encounter difficulty (if not impossibility) in attempting to recoup the funds that the challengers would have used, in the meantime, toward their religious training and theological education. As for the challengers, their claimed "hardship" of having to fund their education through other means "is a burden successfully borne by many college students each year." Order Denying Mot. for Prelim. Inj. (Mar. 17, 2000), *in Davey v. Locke*, No. C00-61R (W.D. Wash.)

This factor does not weigh in favor of the challengers' injunction.

## III. The requested injunction would substantially injure other interested parties.

The third factor also weighs against issuance of the injunction. If granted, it "will substantially injure the other parties interested in the proceeding"—particularly, the citizens and taxpayers of Virginia. *Hilton*, 481 U.S. at 776. The funds that the challengers seek for their religious vocational training are exactions from Virginia's taxpayers intended to support private education while respecting their freedom from being compelled to fund the religious training or theological education of others. Va. Const. art. VIII, § 11. Exacting such funds from Virginia's taxpayers, without respecting their own rights of conscience, would

constitute a substantial injury. *Davey*, 540 U.S. at 722, 725. The challengers do not carry their burden on this factor.

## IV. The requested injunction is not in the public interest.

Finally, "the public interest" does not support the injunction. *Hilton*, 481 U.S. at 776. "[I]t is in the public interest to uphold the will of the people, as expressed by acts of the state legislature," and by the provisions of the state constitution, when they "appear harmonious with the [U.S.] Constitution." *Pavek v. Simon*, 967 F.3d 905, 909 (8th Cir. 2020). They are harmonious here. Moreover, the public interest against funding the challengers' religious vocational training has a "historic and substantial" lineage in Virginia, *Davey*, 540 U.S. at 721, where the "constitutional guarantees of religious freedom" "originated," "have no deeper roots," and have "been mo[st] scrupulously observed," *Vlaming*, 302 Va. at 528 (quoting *Reid*, 229 Va. at 187). The injunction should not issue.

## CONCLUSION

For the foregoing reasons, this Court should deny the challengers' motion.

Respectfully submitted,

/s/ Robert S. Claiborne, Jr.
ROBERT S. CLAIBORNE, JR.
CHRISTOPHER P. BERNHARDT
  *Assistant Attorneys General*

JAY JONES
  *Attorney General*

GRETCHEN E. NYGAARD
  *Deputy Attorney General*

JACQUELINE C. HEDBLOM
  *Senior Assistant Attorney
  General/Trial Section Chief*

CALVIN C. BROWN
  *Senior Assistant Attorney
  General/Civil Unit Manager*

April 27, 2026

Office of the Attorney General
202 North Ninth Street
Richmond, Virginia 23219
(804) 482-2275 – Telephone
(804) 371-2087 – Facsimile
rclaibornejr@oag.state.va.us
cbernhardt@oag.state.va.us

*Counsel for Appellees*

# CERTIFICATE OF COMPLIANCE

This response complies with the type-volume limitations of Rule 27(d)(2)(A) because it does not exceed 5,200 words, and this response complies with the typeface and type-style requirements of Rule 27(d)(1)(E) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook typeface.

<u>/s/ Robert S. Claiborne, Jr.</u>
ROBERT S. CLAIBORNE, JR.
*Assistant Attorney General*

## CERTIFICATE OF SERVICE

I certify that on April 27, 2026, I electronically filed the foregoing brief with the Clerk of this Court by using the appellate CM/ECF system. The participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system.

/s/ Robert S. Claiborne, Jr.
ROBERT S. CLAIBORNE, JR.
*Assistant Attorney General*