No. 26-1437

---

**UNITED STATES COURT OF APPEALS**
**FOR THE FOURTH CIRCUIT**

---

CAMERON JOHNSON; LUKE THOMAS; and TRACE STEVENS,

*Plaintiffs-Appellants*,

v.

A. SCOTT FLEMING, in his official capacity as the Director of the State Council of Higher Education for Virginia; JOHN JUMPER, in his official capacity as the Chair of the State Council of Higher Education for Virginia; MAJOR GENERAL JAMES W. RING, in his official capacity as the Adjutant General of Virginia; and DONALD L. UNMUSSIG, in his official capacity as the Chief Financial Officer of the Virginia Department of Military Affairs,

*Defendants-Appellees.*

---

On Appeal from the United States District Court
for the Eastern District of Virginia
Case No. 3:25-cv-00407-RCY

---

# REPLY IN SUPPORT OF APPELLANTS' EMERGENCY MOTION FOR AN INJUNCTION PENDING APPEAL

---

James A. Campbell
Jacob E. Reed
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, VA 20176
(571) 707-4655
jcampbell@ADFlegal.org
jreed@ADFlegal.org

John J. Bursch
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(616) 450-4235
jbursch@ADFlegal.org

Ryan J. Tucker
Jeremiah J. Galus
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
rtucker@ADFlegal.org
jgalus@ADFlegal.org

David A. Cortman
Rory T. Gray
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd. NE
Suite D-1100
Lawrenceville GA 30043
(770) 339-0774
dcortman@ADFlegal.org
rgray@ADFflegal.org

*Counsel for Plaintiffs-Appellants*

## TABLE OF CONTENTS


Table of Authorities .................... ii

Introduction .................... 1

Argument .................... 1

I. *Locke* is inapposite, and the constitutional violation clear. .................... 1

II. Virginia concedes that it can't satisfy strict scrutiny .................... 8

III. Plaintiffs satisfy the other injunction factors. .................... 8

Conclusion .................... 9

Certificate of Compliance .................... 11

Certificate of Service .................... 12

## TABLE OF AUTHORITIES

**<u>Cases</u>**

*Carson ex rel. O.C. v. Makin*,
596 U.S. 767 (2022) .......... 9

*Catholic Charities Bureau, Inc. v. Wisconsin Labor & Industry Review Commission*,
605 U.S. 238 (2025) .......... 1, 2, 7

*Centro Tepeyac v. Montgomery County*,
722 F.3d 184 (4th Cir. 2013) .......... 9

*Clark v. Sweeney*,
607 U.S. 7 (2025) .......... 6

*Colorado Christian University v. Weaver*,
534 F.3d 1245 (10th Cir. 2008) .......... 7

*Espinoza v. Montana Department of Revenue*,
591 U.S. 464 (2020) .......... 5

*Fulton v. City of Philadelphia*,
593 U.S. 522 (2021) .......... 1

*Goldman v. Landsidle*,
552 S.E.2d 67 (Va. 2001) .......... 9

*Kennedy v. Bremerton School District*,
597 U.S. 507 (2022) .......... 7

*Locke v. Davey*,
540 U.S. 712 (2004) .......... passim

*New York v. Cathedral Academy*,
434 U.S. 125 (1977) .......... 7

*NLRB v. Catholic Bishop of Chicago*,
440 U.S. 490 (1979) .......... 8

*Perry v. Sindermann*,
408 U.S. 593 (1972) .......... 3

*Trinity Lutheran Church of Columbia, Inc. v. Comer*,
582 U.S. 449 (2017) .......... 8

*Waters v. Churchill*,
511 U.S. 661 (1994) .......... 6

**Other Authorities**

Mark Storslee, *Church Taxes and the Original Understanding of the Establishment Clause*, 169 U. PA. L. REV. 111 (2020) .......... 5

## INTRODUCTION

Virginia admits it discriminates *among* religions by either imposing government-religiosity standards on private institutions (VTAG) or making religiosity determinations itself (VANGSTAP). So this case is controlled by *Catholic Charities Bureau, Inc. v. Wisconsin Labor & Industry Review Commission*, 605 U.S. 238 (2025), not *Locke v. Davey*, 540 U.S. 712 (2004), and strict scrutiny applies. Moreover, it is indisputable that Virginia's scholarship program includes individualized exemptions, as in *Fulton v. City of Philadelphia*, 593 U.S. 522 (2021). So for that reason too, Virginia must satisfy strict scrutiny.

Given those threshold points, the rest of this case is straightforward. Virginia doesn't dispute (1) this Court's jurisdiction, (2) the State's inability to satisfy strict scrutiny, (3) Plaintiffs' irreparable harm, or (4) the urgency of Plaintiffs' request. Accordingly, this Court should enter an injunction pending appeal without delay.

## ARGUMENT

### I. *Locke* is inapposite, and the constitutional violation clear.

*Locke* isn't a blank check. *Contra* Opp.15–16, 22–25. Factually, Washington's grant didn't discriminate *among* religions or "single[ ] out anyone for special burdens on the basis of religious calling." *Locke*, 540 U.S. at 724 n.8 (citation modified). Legally, the Court rejected Davey's claim that "the denial of funding for vocational religious instruction

alone is inherently constitutionally suspect" and "presumpti[vely] … unconstitutional[ ]." *Id.* at 725. But *Locke* didn't "venture further" into the interplay "between the two Religion Clauses … to uphold the Promise Scholarship Program" challenged there. *Id.*

In contrast, the constitutional violation here is clear. *First*, Virginia admits that it discriminates *among* religions. Students who pursue CIP Code 38-series majors are eligible for VTAG, while students who pursue CIP Code 39-series majors aren't, Opp.18—even though both programs are *inherently* religious and may be *functionally* indistinguishable, Mot.5–7.

Consider Trace Stevens and Cameron Johnson: both chose majors that could be used for professional ministry, but Trace's Religion (General Track) major was VTAG *eligible*, while Cameron's Pastoral Leadership major is VTAG *ineligible*. Opp.9–10. And those who enter Guard service—like Trace—are *denied* VANGSTAP even when they pursue Code 38-series majors, while those who take a civilian route and pursue the same majors *receive* VTAG. Opp.9–10. So in two ways, Virginia favors some religious callings over others. The First Amendment forbids that discrimination. Mot.16–17, 20–22 (citing *Cath. Charities*, 605 U.S. at 247, 250, 252).

*Second*, Virginia concedes that it *picks and chooses* among religious majors based on arbitrary, inconsistent, and vague criteria. Unlike *Locke*, no "distinct category of instruction"—as defined by

private "institution[s]"—is excluded. *Locke*, 540 U.S. at 717, 721. Instead, Virginia either imposes a CIP-Code-39-series rubric on institutions as an arbitrary and inaccurate proxy for future religious vocations (VTAG) or excludes any major housed in a divinity school itself (VANGSTAP), Opp.5–10, 18–19, 21, 23, which discriminates against those who attend religious colleges and against faiths that label religious study a particular way, *accord* Mot.5–7, 19–20. The First Amendment precludes the government from rewarding certain religious choices while punishing others. Mot.21–23 (discussing *Catholic Charities*).

(Virginia's reliance on the language in a VANGSTAP "promissory note" is a red herring. Opp.8, 10. Government can't "deny a benefit to a person on a basis that infringes his constitutionally protected interests." *Perry v. Sindermann*, 408 U.S. 593, 597 (1972). So unconstitutional conditions imposed on a VANGSTAP grant are irrelevant.)

*Third*, Virginia acknowledges another material difference that refutes the claim that *Locke* "directly controls" here. Opp.16; *accord* Mot.16–19. If Davey had lived in Virginia, VTAG would have funded his "double major in pastoral ministries and business management/administration," and no lawsuit would have been filed. *Locke*, 540 U.S. at 717; *accord* Opp.7, 13–14. But Virginia excludes Cameron Johnson and Luke Thomas from VTAG based on their different religious choices—that they aren't called to pursue a second, non-religious major. Opp.7, 9. Again, Virginia picks religious winners and losers, which the First

Amendment prohibits. *Accord* Mot.20–22 (discussing *Catholic Charities*).

*Fourth*, not all "constitutional and statutory restrictions" are equivalent. Opp.17. *Locke* approved Washington's categorical exclusion of "degree[s] in devotional theology" as defined by private institutions. 540 U.S. at 717. But *Locke* never addressed "constitutional and statutory provisions" like Virginia's that result in funding *some* divinity-school-based degrees in one program (VTAG) and funding *no* divinity-school-based degrees in another (VANGSTAP). Opp.9–10, 17, 19, 21. Nor did *Locke* consider the lack of neutrality or general applicability such an arbitrary system entails. Mot.16, 20–21.

*Fifth*, Locke's "historic and substantial state interest" is lacking here. 540 U.S. at 725; *contra* Opp.14, 21, 23, 26, 28. Washington's interest was in "not funding the religious training of clergy"—full stop. 540 U.S. at 722 n.5, 725. Excluding Davey from the Promise Scholarship allegedly served that interest because he "planned for many years to attend a Bible college and to prepare himself through that college training for a lifetime of ministry, specifically as a church pastor." *Id.* at 717 (citation modified).

But here, Virginia tacitly accepts that CIP Code 38-series majors—and CIP Code 39-series double majors and minors—may train grant recipients "to lead a congregation." *Id.* at 721; *accord* Mot.5–6, 16–17. Yet VTAG funds them anyway. Opp.6–7, 18. So Virginia isn't

evenhandedly pursuing any interest, let alone a historic and substantial one. *E.g.*, Mark Storslee, *Church Taxes and the Original Understanding of the Establishment Clause*, 169 U. PA. L. REV. 111, 135 (2020) ("Programs like [Virginia's] general assessment specifically allocated the property of citizens solely to support religious worship, and as such, could fairly be understood as mandating a tithe. But the same thing was not true when public funds were provided in pursuit of some other good, even if beneficiaries might use some of the funds for religion."); *cf.* *Espinoza v. Mont. Dep't of Revenue*, 591 U.S. 464, 480 (2020) (identifying "no comparable 'historic and substantial' tradition").

Plus, Cameron and Luke aren't like Davey: a potential call to professional ministry wasn't the "only reason for them to seek a college degree." *Locke*, 540 U.S. at 721 (citation modified). They have kept their options open and remain interested in secular careers. Mot.10–12. That further weakens any interest Virginia has in excluding Cameron and Luke from VTAG. This is particularly true of the music degree that Luke wants to pursue here, which teaches many of the same skills used by secular music leaders. Mot.11–12.

What's more, Virginia admits that Trace's efforts to become a Guard chaplain implicate "a different history and interest" than those present in *Locke*. Opp.25. Because *Locke* is inapposite for military chaplains, Virginia can't justify excluding Trace from VANGSTAP—especially when Virginia *would* fund Trace's undergraduate studies

under VTAG. The irrationality of Virginia's funding decisions underscores its discrimination among religions.

*Finally*, *Locke* didn't address most of Plaintiffs' claims because Davey didn't raise them. Courts are limited by the party presentation rule, which holds that "[t]he parties frame the issues for decision" and "the court serves as neutral arbiter of matters the parties present." *Clark v. Sweeney*, 607 U.S. 7, 9 (2025) (per curiam) (citation modified). *Locke* "cannot be read as foreclosing … argument[s] that [it] never dealt with." *Waters v. Churchill*, 511 U.S. 661, 678 (1994). Observing this truism does not mean that Plaintiffs are fashioning "a Constitution of their own choosing." Opp.23.

Virginia also fails to rebut Plaintiffs' claims on the merits. Concerning the trilogy of public-benefit cases, Virginia says that the Supreme Court has repeatedly distinguished *Locke*. Opp.24. True. But that *supports* Plaintiffs' argument that *Locke* is enervated and inapposite here, Mot.16–19, and *undermines* Virginia's claim that *Locke* is all-encompassing, Opp.15–16, 22–24.

On neutrality and general applicability, Virginia doesn't dispute that it "impos[es] government-religiosity standards." Opp.21. Instead, it merely says this case isn't like *Fulton* because officials can't waive VTAG's and VANGSTAP's religious exclusions "for *any reason*." Opp.25 (emphasis added). But that's not the rule. State law lacks general applicability "if it provides a mechanism for individualized exemptions."

*Kennedy v. Bremerton Sch. Dist.*, 597 U.S. 507, 526 (2022) (citation modified). Virginia law indisputably does: VTAG regulations allow individualized exemptions to the religious-double-major and full-time-student requirements for secular reasons. So does the VANGSTAP Command Policy, which says nothing about divinity departments and permits case-by-case exemptions for secular reasons. Mot.20–21.

Virginia writes off the denominational-preference claim, saying that *Locke* allows it to "deny taxpayer funding for religious vocational training" however it likes. Opp.22. But *Locke* involved no denominational preference. 540 U.S. at 717. Here, VTAG and VANGSTAP "differentiate[ ] between religions along theological lines," which "is textbook denominational discrimination" that the First Amendment forbids. *Cath. Charities*, 605 U.S. at 248.

As for excessive entanglement, Virginia argues only that the facts were different in *Colorado Christian University v. Weaver*, 534 F.3d 1245 (10th Cir. 2008). Opp.25–26. But the legal principles are the same. *Colo. Christian*, 534 F.3d at 1261–66. The Supreme Court has rejected "elaborate procedures for ensuring that educational services to be reimbursed by the [s]tate were kept free of religious influences." *New York v. Cathedral Academy*, 434 U.S. 125, 129 (1977) (citation modified). Yet VTAG and VANGSTAP employs such procedures, even though "[it] is not only the conclusions … reached …, but also the [state's] very process of inquiry leading to findings and conclusions"

about religious matters that violates "the Religion Clauses." *NLRB v. Cath. Bishop of Chi.*, 440 U.S. 490, 502 (1979).

## II. Virginia concedes that it can't satisfy strict scrutiny.

Virginia's decision to "exclude [Plaintiffs] for purposes of [its] public program[s] must withstand the strictest scrutiny." *Trinity Lutheran Church of Columbia, Inc. v. Comer*, 582 U.S. 449, 463 (2017). Virginia can't satisfy that standard. Mot.23–24. And Virginia offers no response to Plaintiffs' arguments, conceding that its laws don't advance highest-order interests and aren't narrowly tailored. Opp.26.

## III. Plaintiffs satisfy the other injunction factors.

Virginia doesn't dispute the irreparable nature of Plaintiffs' harm. It just says that forcing Plaintiffs to pay thousands more for their education because of their religious exercise is unimportant. Opp.27. But Virginia's decision to exclude Plaintiffs "from a public benefit for which [they are] otherwise qualified, solely because [of their faith], is odious to our Constitution …, and cannot stand." *Trinity Lutheran*, 582 U.S. at 467.

Virginia says that if its laws are constitutional, enjoining them would harm the public interest. Opp.28. But VTAG and VANGSTAP conflict with the First Amendment because they (1) discriminate based on religious activity, (2) aren't neutral or generally applicable, (3) impose a denominational preference, and (4) result in excessive

entanglement. Mot.19–23; *supra* pp.6–8. The public interest favors an injunction. *Centro Tepeyac v. Montgomery Cnty.*, 722 F.3d 184, 191 (4th Cir. 2013).

So does the balance of equities. Virginia raises the interests of non-party "citizens and taxpayers." Opp.27. But the Commonwealth minimizes those interests by denying taxpayers standing to challenge state programs like VTAG and VANGSTAP. *Goldman v. Landsidle*, 552 S.E.2d 67, 71–72 (Va. 2001). And Virginia's "antiestablishment interest does not justify enactments that exclude some members of the community from an otherwise generally available public benefit because of their religious exercise." *Carson ex rel. O.C. v. Makin*, 596 U.S. 767, 781 (2022).

## CONCLUSION

For these reasons and those stated in Plaintiff's motion, the Court should issue the requested injunction pending appeal without delay.

Dated: April 30, 2026

Respectfully submitted,

*s/Rory T. Gray*

James A. Campbell
Jacob E. Reed
ALLIANCE DEFENDING FREEDOM
44180 Riverside Pkwy
Lansdowne, VA 20176
(571) 707-4655
jcampbell@ADFlega.org
jreed@ADFlegal.org

Ryan J. Tucker
Jeremiah J. Galus
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
rtucker@ADFlegal.org
jgalus@ADFlegal.org

John J. Bursch
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Suite 600
Washington, DC 20001
(616) 450-4235
jbursch@ADFlegal.org

David A. Cortman
Rory T. Gray
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd. NE
Suite D-1100
Lawrenceville GA 30043
(770) 339-0774
dcortman@ADFlegal.org
rgray@ADFflegal.org

*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF COMPLIANCE

This motion complies with the word limit of Fed. R. App. P. 27(d)(2)(C) because it contains 1,871 words, excluding parts exempted by Fed. R. App. P. 32(f).

This motion complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in Word 365 using a proportionally spaced typeface, 14-point Century Schoolbook.

Dated: April 30, 2026

*s/Rory T. Gray*
Rory T. Gray
*Counsel for Plaintiffs-Appellants*

## CERTIFICATE OF SERVICE

I hereby certify that on April 30, 2026, I electronically filed the foregoing reply with the Clerk of the Court for the United States Court of Appeals for the Fourth Circuit using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users, and that service will be accomplished by that system.

*s/Rory T. Gray*
Rory T. Gray
*Counsel for Plaintiffs-Appellants*